CHRISTINE HASHIMOTO (15624)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
E-mail: chashimoto@agutah.gov
*Attorneys for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| TAUFIQ HUSSAIN SHAH,<br><br>                    Plaintiff,<br><br>vs.<br><br>WEBER STATE UNIVERSITY<br><br>                    Defendant. | **MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br>Case No. 1:18-cv-00105-DB-CMR<br><br>Judge Dee Benson<br>Magistrate Judge Cecilia M. Romero |

Pursuant to Federal R. Civ. P. 56, Defendant Weber State University ("WSU"), by and through counsel, Christine Hashimoto, Assistant Utah Attorney General, moves the Court for an order of summary judgment dismissing this case with prejudice as a matter of law and submits the following memorandum in support of Defendant's Motion for Summary Judgment.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ................................................................................1

SUMMARY JUDGMENT STANDARD ................................................2

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................3

ARGUMENT ....................................................................................12

  I.  Plaintiff Cannot Provide Admissible Evidence to Establish the Essential
     Elements of His Claims of Discrimination Pursuant to Title VII. ................13

    A.  Plaintiff's Allegations and Supporting Evidence Are Insufficient to
       Establish the Essential Elements of Race Discrimination. ........................15

    B.  Plaintiff's Allegations and Supporting Evidence Are Insufficient to
       Establish A Prima Facie Case of Religious Discrimination as A Matter of
       Law. ..............................................................................................17

    C.  Plaintiff's Allegations and Supporting Evidence Are Insufficient To
       Establish A Prima Facie Case Of National Origin Discrimination As A
       Matter Of Law. ...............................................................................19

    D.  Plaintiff Provides No Factual Support or Admissible Evidence Showing A
       Reasonable Inference of Discrimination. ..............................................21

  II.  Summary Judgment Should Be Granted to Defendant Because Plaintiff
      Cannot Produce Sufficient Evidence to Show That A Causal Connection
      Existed Between the Non-Renewal of His Contract and Any Protected
      Activity. .........................................................................................22

  III.  Plaintiff Cannot Rely on A Subordinate Bias Theory to Support His Claims
       of Discrimination..............................................................................24

  IV.  Same Actor Inference................................................................................25

CONCLUSION ...................................................................................26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Antonio v. Sygma Network, Inc.*,
  458 F.3d 1177 (10th Cir. 2006) ...................................................... 26

*Argo v. Blue Cross & Blue Shield of Kan., Inc.*,
  452 F.3d 1193 (10th Cir.2006) ...................................................... 22

*Bekkem v. Wilkie*,
  915 F.3d 1258 (10th Cir. 2019) ................................................ Passim

*Bennett v. Windstream Communications, Inc.*,
  792 F.3d 1261 (10th Cir. 2015) ...................................................... 13

*Bones v. Honeywell Int'l, Inc.*,
  366 F.3d 869 (10th Cir. 2004) ........................................................ 13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................. Passim

*Champagne Metals v. Ken-Mac Metals, Inc.*,
  458 F.3d 1073 (10th Cir. 2006) ...................................................... 13

*Cone v. Longmont United Hosp. Ass'n*,
  14 F.3d 526 (10th Cir. 1994) ......................................................... 18

*DePaula v. Easter Seals El Mirador*,
  859 F.3d 957 (10th Cir. 2017) ................................................. 14, 15

*Drury v. BNSF Ry. Co.*,
  657 F. App'x 785 (10th Cir. 2016) ........................................... 15, 17

*E.E.O.C. v. PVNF, L.L.C.*,
  487 F.3d 790 (10th Cir.2007) ........................................................ 19

*EEOC v. BCI Coca–Cola Bottling Co. of L.A.*,
  450 F.3d 476 (10th Cir. 2006) ................................................. 24, 25

*Ellis v. J.R.'s Country Stores, Inc.*,
  779 F.3d 1184 (10th Cir. 2015) ...................................................... 13

*Hasan v. AIG Prop. Cas. Co.*,
  935 F.3d 1092 (10th Cir. 2019) ...................................................... 12

*Lobato v. N.M. Env't Dep't*,
  733 F.3d 1283 (10th Cir. 2013) ............................................... 24, 25

*Lounds v. Lincare, Inc.*,
  812 F.3d 1208 (10th Cir. 2015) ...................................................... 22

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) ........................................................... 14, 16

*Morgan v. Hilti, Inc.*,
　108 F.3d 1319 (10th Cir. 1997) ................................................................ 14
*Pelt v. Utah*,
　539 F.3d 1271 (10th Cir. 2008) .................................................................. 2
*Salguero v. City of Clovis*,
　366 F.3d 1168 (10th Cir. 2004) ................................................................ 15
*Self v. Crum*,
　439 F.3d 1227 (10th Cir. 2006) .................................................................. 3
*Staub v. Proctor Hosp.*,
　562 U.S. 411 (2011)................................................................................... 24
*Tabor v. Hilti, Inc.*,
　703 F.3d 1206 (10th Cir. 2013) ................................................................ 21
*University of Texas Southwestern Medical Center v. Nassar*,
　133 S.Ct. 2517 (2013).......................................................................... 22, 23

Rules

Fed. R. Civ. P. 56(a)............................................................................... 2, 12
Fed. R. Civ. P. 56(c)(1)(A) ......................................................................... 3
Federal R. Civ. P. 56 ............................................................................... 1, 2

## **INTRODUCTION**

Defendant is entitled to judgment as a matter of law because Plaintiff cannot meet his burden of proof establishing the essential elements of his claims of discrimination based on his race, national origin, or religion, or retaliation. Nor can Plaintiff overcome the Defendant's showing of legitimate, non-retaliatory, non-discriminatory rationale for not renewing his contract.

Plaintiff alleges that Defendant's agents discriminated against him based on his race, religion, and national origin, and retaliated against him for complaining about supposed harassment. Defendant denies the allegations. Plaintiff was hired as a contract faculty member on a year to year contract, in a non-tenure track position, with no expectation of continued employment. The individuals against whom Plaintiff makes his allegations went out of their way to help Plaintiff be hired and be successful, knowing of his protected characteristics.  However, despite much coaching, the record shows ample evidence that Plaintiff showed poor job performance, failed to improve, had become disruptive and had caused other concerns with students, none of which related to activities protected under Title VII.

Summary judgment in favor of the Defendant is appropriate because Plaintiff cannot meet the burden of proof on any of his alleged claims. Plaintiff alleges only two statements as evidence of discrimination. Both statements were made by the Department Chair, Chair. Grunow, neither of which were directed at Plaintiff: (1) a

comment referring to a student as "our African-American student," and (2) wanting to have "a come to Jesus or Allah or Abraham meeting" with a student. In addition, the decision not to renew his contract was made by Dean Simonian and was rationally based on Plaintiff's performance. There is insufficient evidence to show that the non-renewal of his contract was based on discriminatory animus or retaliation due to complaints of discrimination or harassment.

For these reasons, summary judgment should be granted to Defendant on all counts.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56, the court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can satisfy its initial burden by producing "affirmative evidence negating an essential element of the non-moving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotation marks omitted). If the movant carries this initial burden, the nonmovant must then "go beyond the pleadings and designate specific facts" that would be admissible in evidence in the event of trial

"so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006); see Fed. R. Civ. P. 56(c)(1)(A). If the non-movant fails to meet its burden as to one element of a claim, summary judgment is appropriate on that claim. *Celotex*, 477 U.S. at 323.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff is of Pakistani origin.[1]

2.      Plaintiff alleges to be a practicing Muslim.[2]

3.      Plaintiff worked as an adjunct faculty member from 2010 to 2013.[3]

4.      During all relevant times, the Chair of the Department was Jeff Grunow.[4]

5.      During all relevant times, the Dean of the College was Yasmen Simonian.[5]

6.      Dean Simonian is from Iran.[6]

---

[1] P's Compl., Doc. 2, ¶8.
[2] *Id.*, ¶9.
[3] *Id.* ¶¶10, 15; *Exhibit 1*, Plaintiff's Resume.
[4] P's Compl., ¶11.
[5] *Id.* ¶12.
[6] *Exhibit 2*, Deposition of Yasmen Simonian (Simonian Dep.) dated December 7, 2016, 29:1-8.

7.      In May 2013, Plaintiff was hired as a full-time instructor, on a one-year contract, in a non-tenure track position. The hiring is done by the Dean.[7]

8.      The position required a Bachelor's degree and current certification as a National Registry Paramedic.[8]

9.      In order to help Plaintiff qualify for the position, the Department Chair made sure to register him with the National Association of EMS Educators.[9]

10.     In order to help Plaintiff meet the requirement for a Bachelor's degree, the Chair assisted him with his Capstone paper. He suggested changes to the paper and worked with the academic committee to ensure Plaintiff received a passing grade on the paper. The Dean also assisted, adjusting the deadline by which Plaintiff's Bachelor's degree had to be completed to qualify for the position.[10]

11.     When Plaintiff was hired as a full-time contract instructor, he needed more education in certain subjects. The Department discussed its requirements with Plaintiff at the time he was offered his first full time contract in

---

[7] *Exhibit 3*, May 30, 2013 Offer; *Exhibit 2*, Simonian Dep., 34:11-24, 36:16-22.
[8] *Exhibit 4*, Position Advertisement.
[9] *Exhibit 5*, NAEMSE Registration; *Exhibit 6*, Request for Receipt from NAEMSE.
[10] *Exhibit 7*, Capstone Draft #2 emails; *Exhibit 8*, BIS Capstone Project emails; *Exhibit 9*, Final Grade emails.

2013. Plaintiff was required to complete continuing education courses as soon as possible.[11]

12.     In June 2014, Plaintiff's contract was renewed for one year. That contract made clear that a decision regarding future renewal of the contract would be based, in part, on the quality of his teaching, demonstrated progress in scholarly activities, satisfactory service, and any other activities, as assigned by the department chair. The contract stated that the starting point for the process would be his annual review.[12]

13.     In July 2014, Plaintiff underwent an annual review which, in part, listed areas needing improvement and goals for the coming year. The review was signed by both the Chair and Plaintiff.[13]

14.     Areas needing improvement included, under "Affability" 1) "language must become professional," and 2) "student interaction/relationships must become more professional." Under Course Preparation: 1) "Shoot from the hip style needs to be traded in for more deliberate, prepared professional approach," and 2) "providing greater informational depth to the Power Point slides."[14]

---

[11] *Exhibit 2*, Simonian Dep., 44:4-24, 45:1-24, 74:2-18; *Exhibit 7*, Capstone Draft #2 emails.
[12] *Exhibit 10*, June 23, 2014 Offer.
[13] *Exhibit 11*, 2014 Performance Evaluation.
[14] *Id.*, pg. 5.

15.     Goals for the upcoming academic year included, 1) "Clean up language and demonstrate professional demeanor," 2) "Show greater diligence in classroom lecture preparation," 3) "Post and maintain office hours," 4) "Enhance higher order emergency medical knowledge by attending a critical care transport course," 5) "Begin work on Master's degree." [15]

16.     The Chair discussed the annual review with the Dean. She agreed with his evaluation of Plaintiff based on her own observations.[16]

17.     In July 2014, the Chair registered Plaintiff for an Emergency Medical Critical Care course in October 2014 for which the University paid. One reason for an October course was that the Chair felt Plaintiff would be away during much of the summer of 2014.[17]

18.     Plaintiff refused to go to the course and the University retracted his registration.[18]

---

[15] *Id.*

[16] *Exhibit 2*, Simonian Dep., 58:2-60:12, 63:5-64:19, 66:10-16, 67:16-69:25, 72:8-13.

[17] *Exhibit 12*, CCEMT-P course correspondence; *Exhibit 13*, Plaintiff's summer email dated July 3, 2014.

[18] *Exhibit 14*, CCEMT-P Cancellation dated September 26, 2014; *Exhibit 15*, Deposition of Taufiq Shah (Shah Dep.) dated December 2, 2016, 55:1 - 57:19.

19.     In October 2014, the Chair recommended another course to Plaintiff to enhance his teaching ability and his critical care medical knowledge. Plaintiff refused to attend the course.[19]

20.     Plaintiff never attended a critical care course. He complained to the Dean about the requirement to attend a critical care class. She encouraged him to get more education.[20]

21.     The Dean and the Chair met with Plaintiff in October 2014 to discuss his academic performance and to counsel him on needed improvements.[21]

22.     Plaintiff and the Chair had ongoing differences of opinion about how the department should be run.[22]

23.     This was evidenced particularly in October 2014, when Plaintiff became engaged in a dispute with the Chair regarding the administration of the night class. The Dean was kept aware of these discussions.[23]

---

[19] *Exhibit 16*, Loma Linda Course Email dated October 13, 2014; *Exhibit 17*, Plaintiff's Refusal dated October 14, 2014.

[20] *Exhibit 3*, Simonian Dep., 48:7 - 50:21, 51:2-13, 51:19-52:5, 75:15-76:2.

[21] *Exhibit 18*, Deposition of Jeffrey Grunow (Grunow Dep.) dated December 6, 2016, 132:14-25, 135:10-136:3.

[22] *Exhibit 19*, Official Transcript of Electronic Recording (Meeting Transcript), 17:21-18:2, 21: 9-17, 31:11-19.

[23] *Exhibit 20*, Night Class Schedule emails dated October 20, 2014; *Exhibit 21*, Night Class Schedule emails dated October 21, 2014.

24.     Despite the Chair's direction for Plaintiff to teach the night classes, Plaintiff refused to do so stating that he was "going to opt out of teaching night class."[24]

25.     The dispute resulted in an exchange of emails in late October 2014 in which the Chair explained what Plaintiff needed to do to improve his performance.[25]

26.     In November 2014, the Dean and the Chair held a meeting with Plaintiff to discuss his performance issues and his disagreeable attitude. The Dean asked both the Chair and Plaintiff to submit concerns to her in writing prior to the meeting.[26]

27.     In the November 2014 meeting there was much discussion regarding the differences of opinion between Plaintiff and the Chair about how the program should be run.[27]

28.     In January 2015, Professor Bill Robertson reported to the Chair various student complaints made against Plaintiff regarding comments and class

---

[24] *Id.*
[25] *Exhibit 22*, Night Class emails dated October 25, 2014.
[26] *Exhibit 23*, Areas of Concern.
[27] *Id. Exhibit 15* Shah Dep., 79:11-80:20, 84:25-86:22, 87:11-88:3.

activities the students reported as including inappropriate sexual innuendo. The Dean was informed of these complaints.[28]

29.     Professor Robertson had been hired at the same time as Plaintiff to a tenure track faculty position. He held a Master's degree when hired.[29]

30.     As a result of the student complaints, the Chair held a counseling session with Plaintiff.[30]

31.     During Plaintiff's time as a full-time instructor, a number of student evaluations complained about his teaching method, including lack of preparation, lack of focus on the material, the lack of value of lecture time, or a lack of teaching during class time.[31]

32.     In April 2015, the Dean received input regarding Plaintiff's poor performance as a faculty member and his future in the Department from Bill Robertson. This included concerns that Plaintiff had acted unethically by trying to sabotage or undermine students and the Chair.[32]

---

[28] *Exhibit 24*, Student Concerns, Robertson Email; *Exhibit 25*, Student Concerns, Grunow Email.

[29] *Exhibit 26*, William Robertson Deposition (Robertson Dep.) dated December 6, 2016, 8:9-10:1.

[30] *Exhibit 27*, Counseling Memo dated January 27, 2015.

[31] *Exhibit 28*, Student Evaluations, PAR 2020; *Exhibit 29*, Student Evaluations, PAR 2030.

[32] *Exhibit 30*, Concerns Emails dated April 1-2, 2015.

33.     The Dean came to the decision to not renew Plaintiff's contract because of his lack of performance and improvement, including not pursuing higher medical knowledge education as they had requested, and his disruptive influence. She came to the decision on her own, and later sought input from the Chair and others.[33]

34.     The Dean and the Chair advised Plaintiff that his contract would not be renewed in a meeting. Plaintiff recorded the meeting.[34]

35.     In the meeting, the Dean and the Chair explained that Plaintiff was not a good fit for the evolving Department. They were moving towards offering a Bachelor's degree which would require all faculty members to have Master's Degrees.[35]

36.     They pointed out that Plaintiff had ignored their demand that he strengthen his medical knowledge.[36]

37.     They noted that Plaintiff had been expected to become more professional.[37]

---

[33] *Exhibit 2*, Simonian Dep., 77:11-78:11, 79:19-80:3, 80:16-23, 81:8-22, 82:4 - 84:24, 95:11-15, 110:10- 12.
[34] *Exhibit 19*, Meeting Transcript.
[35] *Id*., 4:13-25; 13:16-14:22.
[36] *Id*. 4:23-5:3; 10: 25-11:1-2; 11:19-22; 13:8-12; 26:23-27:2.
[37] *Id*. 7:8-9; 8:23-9:3; 18:9-15; 24:14-16.

38.     The Dean continued to impress upon him the weaknesses in his teaching and that there needed to be more substantive materials taught in his class.[38]

39.     They pointed out that Plaintiff had been disruptive in the Department.[39]

40.     They also mentioned they had taken into account student evaluations and complaints.[40]

41.     Though Plaintiff raised concerns about differences of opinion about how the program should be run, at no point in that meeting did Plaintiff raise concerns about discrimination or harassment.[41]

42.     In the April 2015 meeting the Dean reminded Plaintiff that the Chair had gone out of his way to help Plaintiff get the job in the first place, and to help Plaintiff succeed.[42]

43.     In the meeting, the Dean made clear that she respected and cared for Plaintiff and would help him in any way she could.[43]

---

[38] *Id*. 18:11-14. 24:15.
[39] *Id*. 7:11-14; 9:5-7; 17:16-25; 21:4-5.
[40] *Id*. 8:5-15; 25:14- 21.
[41] *Id*. 31:11-19; 21: 9-17.
[42] *Id*. 9:17- 20; 11:5-9; 18:18-21; *Exhibit 2*, Simonian Dep. 31:24-32:1.
[43] *Exhibit 19,* Meeting Transcript 17:7-12; 25:7- 10.

44.     During the entirety of Plaintiff's employment in the Department, the Dean had a personal, congenial relationship with Plaintiff.[44]

45.     The Dean never harassed or discriminated against Plaintiff in any way.[45]

46.     Plaintiff's complaint includes two specific incidents:

    a.     The come to Jesus, Allah, or Abraham meeting comment made about a student in November 2014.[46]

    b.     The comment made about an African-American paramedic student in February 2015.[47]

47.     When the Saudi students were enrolled, the Department worked hard to make them successful, including asking Plaintiff to work specifically with them.[48]

## **ARGUMENT**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)

---

[44] *Exhibit 2*, Simonian Dep., 28:2-25, 46:4-7, 124:2-17.
[45] *Exhibit 15*, Shah Dep., 53:24-54:8.
[46] *Exhibit 31*, Come to Jesus comment email dated November 1, 2014.
[47] *Exhibit 32*, African-American comment letter dated June 25, 2015.
[48] *Exhibit 2*, Simonian Dep., 38:5-40:18.

(quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists "unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." *Id.* (quoting *Bones v. Honeywell Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004)). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones,* 366 F.3d at 875. Rather, "[t]o defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* Although a party may submit an affidavit or declaration in opposing summary judgment, the content "must be based on personal knowledge and must set forth facts that would be admissible in evidence." *Ellis v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1201 (10th Cir. 2015) (brackets and internal quotation marks omitted). Finally, the court has "discretion to affirm [a summary judgment] on any ground adequately supported by the record, so long as the parties have had a fair opportunity to address that ground." *Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1088 (10th Cir. 2006) (internal quotation marks omitted).

## I.   Plaintiff Cannot Provide Admissible Evidence to Establish the Essential Elements of His Claims of Discrimination Pursuant to Title VII.

Under Title VII, a plaintiff bears the ultimate burden of proving his employer intentionally discriminated against him. *Bennett v. Windstream Communications, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015). To survive summary judgment on a Title

13

VII claim of discrimination based on race, color, religion, sex, or national origin, a plaintiff must present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Under the *McDonnell Douglas* framework, a plaintiff must first "raise a genuine issue of material fact on each element of the prima facie case." *Bekkem*, 915 F.3d at 1267 (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)). The burden then "shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* The burden on the Defendant to provide such a reason is "exceedingly light as its stated reasons need only be legitimate and non-discriminatory on their face" *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal citations and quotation marks omitted). If the employer does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual." *Bekkem*, 915 F.3d at 1267.

At all times the burden of persuasion rests with the Plaintiff. "Under the three-part McDonnell Douglas framework, the burden of production shifts from the plaintiff to the defendant and back to the plaintiff…But the plaintiff bears the ultimate burden of persuasion to show discrimination…the defendant's burden is one of production, not persuasion; it can involve no credibility assessment."

*DePaula* at 969 (internal citations and quotation marks omitted). The courts have cautioned judges when reviewing terminations not to substitute their own judgment for that of the employer.

> Although we may consider all of the foregoing matters, [w]e may not second guess the business judgment of the employer. Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility. In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear to the person making the decision, and do not look to the plaintiff's subjective evaluation of the situation. Instead of asking whether the employer's reasons were wise, fair or correct, the relevant inquiry is whether the employer honestly believed those reasons and acted in good faith upon those beliefs.

*DePaula* at 970–71 (internal citations and quotation marks omitted).

### A. Plaintiff's Allegations and Supporting Evidence Are Insufficient to Establish the Essential Elements of Race Discrimination.

To establish a prima facie case of discrimination based on race, a plaintiff must prove a prima facie case of discrimination based on race by showing "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Drury v. BNSF Ry. Co*., 657 F. App'x 785, 789 (10th Cir. 2016) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)).

If Plaintiff can satisfy his burden of establishing a prima facie case of discrimination, the burden of production shifts back to the employer to "articulate

some legitimate, nondiscriminatory reason" for its termination decision. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the employer has done so, the burden shifts back to the employee to show that the proffered reason is pretextual. *Id*. at 804.

Though Plaintiff does not name a specific race of which he is a member, people of all races are considered to be members of a protected class. Therefore, there is no real dispute as to the first element. However, Plaintiff cannot establish the second element by showing that he was performing his job satisfactorily. The record shows that he was not meeting the requirements for a full-time academic position. Plaintiff was counselled numerous times that he needed to enhance his teaching, obtain additional critical care education, and otherwise improve his performance. But the record makes clear that Plaintiff did not meet the performance improvements required by the Department, lacked substance in his teaching, was unprofessional and disruptive of the academic environment, including behaving in ways that caused students to complain about inappropriate behavior, and otherwise undermined the efforts of the department.

Even if Plaintiff could satisfy the second element, Dean Simonian chose not to renew Plaintiff's contract for legitimate business reasons. Ultimately Plaintiff's contract was not renewed for the above articulated poor performance, unprofessionalism, and discord within the department sown by the Plaintiff. Plaintiff

cannot show that Defendant's reasoning is pretextual. Because Plaintiff's factual allegations are insufficient to establish a prima facie case of race discrimination as a matter of law or that Defendant's reason for not renewing Plaintiff's contract is pretextual, summary judgment should be granted to the Defendant on this claim.

### B. Plaintiff's Allegations and Supporting Evidence Are Insufficient to Establish A Prima Facie Case of Religious Discrimination as A Matter of Law.

The same analysis applies to discrimination based on religion. Because Plaintiff alleges he received unfavorable treatment motivated by an animus against his particular religion, he must show "(1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination." *Drury* at 789. As with race, if Plaintiff can satisfy his burden of establishing a prima facie case of discrimination, the burden of production shifts back to the employer to articulate some legitimate, nondiscriminatory reason for its termination decision.

Again, Plaintiff is unable to establish that at the time his contract was not renewed, his performance was satisfactory, which is required as a matter of law. The record is clear that Plaintiff was not adhering to expectations that had been outlined for him, had acted in an insubordinate and disruptive manner, lacked substance and professionalism in his teaching, and created other legitimate concerns for the department.

In addition, Plaintiff has not met his burden of showing a reasonable inference of discrimination as a matter of law. The only statement Plaintiff alleged in Plaintiff's complaint regarding discrimination based on religion is the comment the Chair made about a student having to have a "come to Jesus, Allah or Abraham meeting." This one stray comment was not directed at Plaintiff and is not evidence that Dean Simonian's decision not to renew Plaintiff's contract was based on any discriminatory animus. The court has stated that "comments referring directly to the worker may support an inference of age discrimination…However,…isolated [or] ambiguous comments are too abstract…to support a finding of age discrimination …Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions… [Plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and the [Defendant]'s decision to terminate her." *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 531 (10th Cir. 1994) (internal citations quotation marks omitted).

Furthermore, there is no evidence this comment was linked to the decision not to renew Plaintiff's contract. "[I]n order to establish pretext Plaintiff must still show some nexus…between her supervisor's discriminatory statements or actions and the adverse employment action" *Bekkem v. Wilkie*, 915 F.3d 1258, 1269 (10th Cir. 2019) (internal citations and quotation marks omitted). This statement was made by Chair Grunow who was not the decision maker in not renewing Plaintiff's contract. "Even

when a decisionmaker has made discriminatory statements, this is insufficient to establish such a nexus; rather, something in the decisionmaker's statements must link them to the adverse employment action at issue in the case." *Id.* Again, the substantial evidence in the record shows that the Plaintiff's contract was not renewed for the legitimate business reasons outlined above, unrelated to any discriminatory animus. Plaintiff has no evidence of a nexus between this statement and the decision to not renew his contract by Dean Simonian.

Because Plaintiff's factual allegations are insufficient to establish a prima facie case of religious discrimination as a matter of law or that Defendant's reason for not renewing Plaintiff's contract is pretextual, summary judgment should be granted to the Defendant on this claim.

### C. Plaintiff's Allegations and Supporting Evidence Are Insufficient To Establish A Prima Facie Case Of National Origin Discrimination As A Matter Of Law.

The same analysis applies to discrimination based on national origin. Plaintiff alleges he received unfavorable treatment motivated by an animus against his national origin. To establish a prima facie case of discrimination based on national origin, an employee must present evidence that (1) he belongs to a protected class, (2) he suffered an adverse employment action, and (3) the "action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.,* 487 F.3d 790, 800 (10th Cir.2007). As with race and religion, if Plaintiff can

satisfy his burden of establishing a prima facie case of discrimination, the burden of production shifts back to the employer to articulate some legitimate, nondiscriminatory reason for its termination decision.

It is not disputed that Plaintiff is of Pakistani origin, a member of a protected class. But as discussed previously Plaintiff cannot establish that he was performing his job satisfactorily.

In addition, Plaintiff has alleged no facts, which if proven, would support an inference of discrimination based on his national origin. This may be why Plaintiff combined in his second cause of action both religious and national origin discrimination.[49]   However, religion and national origin are separate forms of discrimination and cannot be combined. In so much that Plaintiff is relying on national origin discrimination based on the one comment ("come to Jesus, Allah or Abraham meeting"), it fails for the same reasons Plaintiff's claim of discrimination based on religion fails. Plaintiff cannot establish a nexus between this one stray comment of his supervisor and Dean Simonian's decision not to renew his contract. See *Bekkem* at 1269.

Because Plaintiff's allegations are insufficient to establish a prima facie case of national origin discrimination as a matter of law or that Defendant's reason for

---

[49] See P's Compl. Pg. 5.

not renewing Plaintiff's contract is pretextual, summary judgment should be granted to the Defendant on this claim.

### D. Plaintiff Provides No Factual Support or Admissible Evidence Showing A Reasonable Inference of Discrimination.

In addition, Plaintiff does not establish evidence that he was terminated under circumstances giving reasonable inference of discrimination as a matter of law. Plaintiff relies on a stray comment made by Chair Grunow to support his allegation of discrimination based on race and one stray comment with religious implications. However, "comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decision making authority and acted on his or her discriminatory beliefs." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013). Plaintiff's complaint alleges only one statement to support his claim of discrimination based on race, a comment identifying a student as African-American. Plaintiff's complaint alleges only one statement to support his claim of discrimination based on religious discrimination and national origin relating to a comment about having a "Come to Jesus, Allah or Abraham" meeting. Neither comment was directed to or about Plaintiff. Plaintiff fails to establish that there is a nexus between these comments and the non-renewal of his contract. See *Bekkem* at 1269. The decision not to renew the contract was made by the Dean, not by Chair Grunow, and she based her decision on Plaintiff's performance, her own knowledge of Plaintiff, and input from the faculty.

21

Because Plaintiff cannot show nexus between the comments and the non-renewal of his contract or that the reasons why Defendant did not renew Plaintiff's contract were pretextual, summary judgment should be granted in favor of the Defendant on all discrimination claims.

## II.   Summary Judgment Should Be Granted to Defendant Because Plaintiff Cannot Produce Sufficient Evidence to Show That A Causal Connection Existed Between the Non-Renewal of His Contract and Any Protected Activity.

Under *McDonnell Douglas*'s burden-shifting rubric, the plaintiff must first establish a prima facie case of retaliation by proving "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir.2006). Again, if the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the employer to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the proffered rationale is pretextual. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233-1234 (10th Cir. 2015).

The United States Supreme Court has ruled that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged

employment action." *University of Texas Southwestern Medical Center v. Nassar*, 133 S.Ct. 2517, 2528 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 2533. Thus, Plaintiff cannot prevail on his retaliation claim unless he can show that retaliation was the causation in fact of the non-renewal of his contract. He has no evidence to meet that requirement of proof.

Plaintiff cannot show that his complaint was the cause of the non-renewal of his contract. The record shows evidence of only one specific complaint Plaintiff made to the Dean regarding a statement the Chair made about a student in November 2014. (The "Come to Jesus, Allah, or Abraham" comment.) However, the differences of opinion, the insubordinate attitude of the Plaintiff, and the Plaintiff's poor performance were ongoing areas of concern long before and continuing after the Plaintiff's complaint. These issues were recorded in Plaintiff's 2014 – 2015 contract, emails, and Plaintiff's performance review from July 2014, before Plaintiff raised his concern. Ultimately, the Dean was clear that her decision was based on Plaintiff's lack of proper academic performance, his failing to accomplish the required improvements, and his disruptive attitude.

Defendant's motion for summary judgment should be granted on this claim because Plaintiff does not have sufficient evidence of a causal connection between Plaintiff's complaint and the non-renewal of his contract.

### III.   Plaintiff Cannot Rely on A Subordinate Bias Theory to Support His Claims of Discrimination.

Plaintiff makes no claim that Dean Simonian, the decision maker, was biased in any way towards him. Furthermore, Plaintiff cannot rely on a subordinate bias theory. The subordinate bias theory holds that discriminatory animus may be imputed to a neutral decision maker if a supervisor performed an act motivated by prohibited animus that was intended to cause an adverse employment action, and the act was a proximate cause of the adverse employment action. *Staub v. Proctor Hosp.*, 562 U.S. 411, 422–23 (2011). "To prevail on a subordinate bias claim, a plaintiff must establish more than mere "influence" or "input" in the decision making process. Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action." *EEOC v. BCI Coca–Cola Bottling Co. of L.A.*, 450 F.3d 476, 487–88 (10th Cir. 2006).

The record makes amply clear that the decision to not renew the contract was made by Dean Simonian, who had personal knowledge of Plaintiff's performance and who dealt personally with Plaintiff. The Dean also received input from the other full-time faculty member, Bill Robertson. This independent direct knowledge is important because it defeats any potential subordinate bias accusation. The subordinate bias theory does not apply when decision makers do not rely on biased subordinates. *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1295 (10th Cir. 2013). "If

there is no such reliance—that is to say, if the employer independently verifies the facts and does not rely on the biased source—then there is no subordinate bias liability." *Id.* at 1294; see also *EEOC v. BCI Coca–Cola Bottling Co. of L.A.*, 450 F.3d 476, 487 (10th Cir. 2006) ("because a plaintiff must demonstrate that the actions of the biased subordinate caused the employment action, an employer can avoid liability by conducting an independent investigation of the allegations against an employee. In that event, the employer has taken care not to rely exclusively on the say-so of the biased subordinate, and the causal link is defeated"). *Id.* at 488.

Therefore, even if Chair Grunow can be viewed as biased against Plaintiff, which the evidence does not support, Plaintiff cannot make a biased subordinate claim because the Dean made her decision based on her own knowledge and independent evaluation of Plaintiff.[50]

Because Plaintiff's allegations are insufficient to establish a prima facie case of discrimination as a matter of law, summary judgment should be granted to the Defendant on his discrimination claims.

## IV.    Same Actor Inference.

Plaintiff has sought to ascribe the actions of the Defendant's agents to race, national origin or religious bias without submitting evidence of prejudice by the

---

[50] *Exhibit 2*, Simonian Dep., 77:11-78:11, 79:19-80:3, 80:16-23, 81:8-22, 82:4-24, 83:2-15, 83:16-24, 84:1-10, 84:13-24, 95:11-15, 110:10- 12.

decision maker, Dean Simonian. Without direct evidence of prejudice Plaintiff's claims fail as a matter of law. Plaintiff's national origin, race, and religion were obvious to Dean Simonian and Chair Grunow when they went out of their way to help Plaintiff apply for the full-time teaching position and when the Dean hired him for that position with the positive recommendation of the Chair. The law recognizes that it is unlikely that persons involved in the hiring of Plaintiff would be biased and would soon after engage in discrimination. This premise, commonly known as the same actor inference, has been adopted by the Tenth Circuit. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006). "In cases where the employee was hired and fired by the same person within a relatively short time span, there is a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Id.* Plaintiff has no evidence to dispel the inference, or even to show that Dean Simonian was biased.

Because Plaintiff cannot overcome the same actor influence Plaintiff's discrimination claims should be dismissed.

## CONCLUSION

For the forgoing reasons the court should grant Defendant's Motion for Summary Judgment on all three causes of action.

//

//

26

Dated this 10th day of January, 2020.

SEAN D. REYES
Utah Attorney General

*/s/ Christine Hashimoto*
CHRISTINE HASHIMOTO
Assistant Utah Attorney General
*Attorney for Defendant*