IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TAUFIQ HUSSAIN SHAH, <br><br> Plaintiff, <br><br> v. <br><br> WEBER STATE UNIVERSITY, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br> Case No. 1:18-cv-00105 <br><br> District Judge Dee Benson |

Before the court is Defendant Weber State University's Motion for Summary Judgment. Dkt. No. 19. In its motion, Defendant seeks summary judgment on Plaintiff's claims of discrimination and retaliation. The motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

## BACKGROUND

The following facts are undisputed. Plaintiff is a practicing Muslim of Pakistani origin. Dkt. No. 19 at 3. Plaintiff worked at Weber State University as an adjunct faculty member from 2010 to 2013. *Id.* He was hired in May 2013 as a full-time instructor on a one-year contract. Dkt. No 25 at 2-3. Plaintiff's contract was renewed in 2014 but not in 2015. Dkt. No. 19 at 5, 10. Plaintiff alleges in this suit that Defendant's decision not to renew his employment contract was motivated by discrimination and retaliation for protected activity. Dkt. No. 2 at 5-7.

Plaintiff's direct supervisor, Jeffrey Grunow, evaluated Plaintiff's performance in July 2014. Dkt. No. 25 at 4. The 2014 evaluation form includes sections on Plaintiff's strengths, "areas that need improvement," and goals for the upcoming academic year. Dkt. No. 20 Ex. 11 at 6. The goals for Academic Year 2014-2015 include "attend[] a Critical Care Transport Course," "[b]egin work on Master's Degree," "clean up language," and "show greater diligence in classroom lecture preparation." *Id.* In July 2014, Grunow registered Plaintiff in a critical care course located in Kansas. Dkt. No. 19 at 6. Plaintiff declined to attend, claiming the class would not be relevant to him and did not work with his schedule; his registration was subsequently cancelled. Dkt. No 25 at 5-6. In October 2014, Grunow recommended a five-day National Registry Paramedic refresher course in Loma Linda, California to Plaintiff. Dkt. No. 20 Ex. 17 at 2. Plaintiff declined to attend in an email with one line: "Jeff I won't be doing this course." *Id.* Plaintiff did not attend a critical care course from the time he was hired in 2013 until his renewed contract expired in 2015. Dkt. No. 25 at 7. There is no evidence that Plaintiff ever completed coursework toward a master's degree during his employment. *See* Dkt. No. 25 at 17.

In October 2014, Plaintiff and Grunow exchanged emails about a night class they were scheduled to co-teach. Dkt. No. 20 Ex. 21 at 2-5. Plaintiff expressed concern with the structure of the course and "redundancy" in the schedule. *Id.* at 5. Grunow responded, giving reasons for keeping the current schedule. *Id.* at 4. After further disagreement, Plaintiff wrote, "I don't think this will favor the students and, for this reason and all due respect, I'm going to opt out of teaching night class." *Id.* at 3. Grunow attempted to convince Plaintiff to teach a portion of the class, but Plaintiff maintained his refusal. *Id.* at 2-3. Grunow then forwarded the exchange to Dean Yasmen Simonian. *Id.* at 2.

2

On November 1, 2014, Plaintiff emailed Simonian to report an incident he described as "a short but upsetting issue." Dkt. No. 20 Ex. 31 at 2. Plaintiff reported that Grunow had approached him about one of his student's failure to conform with the program's dress code. *Id.* Grunow allegedly told Plaintiff that he (Grunow) was going to have a "come to Jesus or Allah or whatever he believes in or Abraham meeting" with that student. *Id.* Plaintiff reported that he found this "comment to be quite disconcerting, offensive, and blatantly inappropriate." *Id.* Simonian testified that she later confronted Grunow and told him the comment "probably wasn't the best thing," advising him to "just be careful." Dkt. No. 25 at 16. On November 11, 2014, Plaintiff again raised concerns about Grunow, complaining that he had created an "uncomfortable/hostile environment." *Id.*

On January 24, 2015, Bill Robertson, a Weber State faculty member who worked closely with both Grunow and Plaintiff, emailed Grunow to relay student complaints that Plaintiff had made inappropriate sexual remarks. Dkt. No. 20 Ex. 24.[1] Grunow subsequently forwarded the email to Simonian. *Id.* On January 27, 2015, Grunow filed a memo with Simonian memorializing a conversation he had with Plaintiff where he had informed Plaintiff of student complaints regarding inappropriate comments and off-topic stories in class. Dkt. No. 20 Ex. 27. On April 1, 2015, Robertson emailed Simonian, writing that Plaintiff "lacks the experience and depth of knowledge . . . to teach at this level;" that some of Plaintiff's students "expressed their disdain for distasteful and inappropriate comments [Plaintiff] made during classes;" and that

---

[1] Plaintiff objects to this email in his opposition on the grounds that it contains "several layers of inadmissible hearsay." The email is not, however, being used to prove the truth of the matter asserted, but rather to show the effect on the reader. *See* Fed. R. Evid. 801(c). Along with the April 1 email, it is evidence of Dean Simonian's mental state when she chose not to renew Plaintiff's contract.

3

Plaintiff "has shown a history of actively attempting to sabotage other individuals over whom he holds a grudge." Dkt. No. 20 Ex. 30 at 3. Dean Simonian's reply stated, "I am glad to know that we are on the same page." *Id.* at 2.

In a meeting sometime after April 1, 2015, Grunow and Simonian informed Plaintiff that his contract would not be renewed that summer. Dkt. No. 20 Ex. 2 at 80. In the meeting, recorded by Plaintiff, Grunow and Simonian gave Plaintiff several grounds for the non-renewal of his contract: his failure to strengthen his medical knowledge, his lack of professionalism, his disruptive influence in the department, the department's need for instructors with master's degrees, and student complaints. Dkt. No. 20 Ex. 19. The document memorializing the nonrenewal of Plaintiff's contract was signed by Simonian on April 10, 2015. Dkt. No. 20 Ex. 2 at 79. On August 9, 2018, Plaintiff sued Defendant for discrimination and retaliation under Title VII of the Civil Rights Act. Dkt. No. 2. Defendants moved for summary judgment on Jan 10, 2020. Dkt. No. 19. Plaintiff did not oppose summary judgment on his discrimination claims, leaving Plaintiff's claim for retaliation as the only remaining claim. Dkt. No. 25 at 2.

## DISCUSSION

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir. 1990). "The mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient [to overcome a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Plaintiff did not oppose summary judgment on his claims for discrimination. Dkt. No. 25 at 2. Plaintiff's only remaining claim is for retaliation. To prevail on a retaliation claim under Title VII of the Civil Rights Act, a plaintiff must first establish a prima facie case of retaliation by proving "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). Regarding the third element, the United States Supreme Court has stated that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013).

If the plaintiff successfully asserts a prima facie retaliation case, the burden shifts to the employer to come forward with a legitimate, non-retaliatory rationale for the adverse employment action. *Argo*, 452 F.3d at 1202. The defendant having produced such a rationale, the burden shifts back to the plaintiff to show pretext. *Id.* at 1203. In order to show pretext, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (citations and quotations omitted). "[M]ere conjecture that

[the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

Here, Plaintiff has not established a prima facie case for retaliation. Plaintiff's case relies on the proposition that his contract was not renewed because of his complaints on November 1 and November 11, 2014. Under Tenth Circuit precedent, the nonrenewal of a contract qualifies as adverse action under the ADEA (*Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1280 (10th Cir. 2003)), so this court will assume that a contract nonrenewal qualifies as adverse action under Title VII. Informal complaints to supervisors can furthermore constitute protected activity under Title VII (*Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008)), so the court will likewise assume that Plaintiff's November complaints were protected activity. Plaintiff must therefore show a causal connection between the protected activity and the adverse action.

Plaintiff's only evidence of a causal connection between the November complaints and the nonrenewal of his contract is their temporal proximity. Dkt. No. 25 at 22. The Tenth Circuit has issued the following guidance on whether temporal proximity alone may establish prima facie causation: "[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation." *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999). Between these two temporal markers, the Tenth Circuit has not established the exact point at which an adverse action's timing alone ceases to be sufficient to show causation. *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013). Yet in *Meiners v. University of Kansas*, the Tenth Circuit examined a gap that "was a minimum of

about two months and one week and a maximum of just under three months" and held that "[t]hese events are, under our precedents, probably too far apart for Dr. Meiners to establish causation by temporal proximity alone." 359 F.3d 1222, 1231 (10th Cir. 2004).

The decision not to renew Plaintiff's contract at Weber State was officially made on April 10, 2015, about five months after Plaintiff's complaints. Dkt. No. 20 Ex. 2 at 79. Plaintiff was informed of that decision around the same time. Dkt. No. 19 at 11. Plaintiff alleges, however, that adverse action first occurred in January 2015, pointing to the January 24 email from Robertson to Grunow detailing student complaints and Simonian's testimony that she had "made up [her] mind" by the time she heard about those complaints. Dkt. No. 25 at 11. Putting aside the question of whether these incidents constitute "adverse action" and viewing the evidence in the light most favorable to the plaintiff, there was a gap of two months and two weeks between Plaintiff's last complaint and the earliest alleged adverse action. This period is longer than the "minimum of about two months and one week" in *Meiners*, where the Tenth Circuit found that the events were "probably too far apart . . . to establish causation by temporal proximity alone." 359 F.3d at 1222. Plaintiff has therefore failed to establish causation in this instance.

Even if Plaintiff had asserted a prima facie retaliation case, Defendant has offered several legitimate, non-retaliatory reasons for the non-renewal of Plaintiff's contract: his failure to strengthen his medical knowledge, his lack of professionalism, his disruptive influence in the department, the department's need for instructors with Master's degrees, and student complaints. Plaintiff claims these reasons were pretextual because (a) Defendant failed to follow its own policies on sexual harassment, and (b) Defendant offered multiple reasons for the nonrenewal of Plaintiff's contract.

To support his first contention, Plaintiff cites *Plotke v. White*, which states that pretext may be shown "with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances." 405 F.3d 1092, 1102 (10th Cir. 2005). Plaintiff then claims that "[Defendant] did not follow its established procedures for reporting and investigating complaints of discrimination and harassment." Dkt. No. 25 at 24. This is an apparent reference to Plaintiff's earlier contention that Bill Robertson had a duty to report Plaintiff's sexual comments to Weber State's Affirmative Action/Equal Opportunity ("AA/EO") office and failed to do so. *Id.* at 18. Weber State's Discrimination Policy does state that "[a]ll employees have a duty to immediately report to the AA/EO, information related to discriminatory harassment." Yet Plaintiff does not explain how Plaintiff's sexual comments constituted "discriminatory harassment." The policy defines "harassment" as "unwelcome conduct directed against a person based on one or more of that person's 'protected classifications.'" Dkt. No. 26 Ex. 7 at 4. Plaintiff's alleged sexual comments that made students uncomfortable do not fit that definition. Plaintiff's contention that Defendant violated its own policies, which would only discredit Defendant's "student complaints" rationale, therefore fails to show pretext here.

Plaintiff's second contention—that multiple reasons for nonrenewal alone is evidence of pretext—is not supported by the case law cited. *Jaramillo v. Colorado Judicial Dep't* restates the "general rule" that "an employee must proffer evidence that shows each of the employer's justifications are pretextual." 427 F.3d 1303, 1310 (10th Cir. 2005) (citations and quotations omitted). It then gives exceptions to that general rule, holding that a plaintiff may succeed, for instance, if he shows "that the employer offers a plethora of reasons, and the plaintiff raises

substantial doubt about a number of them;" "the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision;" "or the employer has changed its explanation under circumstances that suggest dishonesty or bad faith." *Id.* (citations and quotations omitted).  None of the exceptions outlined in *Jaramillo* apply here—Plaintiff has not discredited a single one of the explanations given by Defendant and has not shown that Defendant's rationale changed under circumstances suggesting bad faith.  Even if Plaintiff had set forth a prima facie case, therefore, he has not carried his burden to rebut Defendant's legitimate reasons for nonrenewal.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

DATED this 1st day of April, 2020.

BY THE COURT:

_____
Dee Benson
United States District Judge